IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID JOSEPH ELKINS,

|  |  |
|---|---|
| Plaintiff, | CV-06-448-ST |
| v. | FINDINGS AND RECOMMENDATIONS |

WASHINGTON COUNTY, municipal
corporation, WASHINGTON COUNTY
SHERIFF, ROBERT GORDON, individually and
in his official capacity, officer TODD DUNCAN,
individually and in his official capacity, officer
TOBY HARRIS, individually and in his official
capacity, officer ZIGGY LOPUSZYNSKI,
individually and in his official capacity,

_____Defendants._____

STEWART, Magistrate Judge:

## **<u>INTRODUCTION</u>**

Plaintiff, David Joseph Elkins ("Elkins"), is a resident of the state of Oregon.  Defendant,

Washington County, is a duly organized municipal corporation and a public body within the

state of Oregon.  At all relevant times, defendant, Robert Gordon ("Gordon"), was the Chief Law

1 - FINDINGS AND RECOMMENDATIONS

Enforcement Officer of Washington County; defendants, Todd Duncan ("Duncan") and Toby Harris ("Harris"), were sheriff deputies employed by Washington County Sheriff's Office; and defendant, Ziggy Lopuszynski ("Lopuszynski"), was a reserve deputy sheriff of Washington County Sheriff's Office.

On March 31, 2006, Elkins filed a Complaint alleging that Washington County and the individual defendants had violated his civil and common law rights arising out of his arrest on May 21, 2004, and subsequent detention in the Washington County jail. Specifically, Elkins alleges that defendants violated: (1) the First, Fourth, and Fourteenth Amendments by arresting him and using excessive force (First Cause of Action); (2) the Fourth and Fourteenth Amendments by searching and seizing his property without probable cause (Third Cause of Action); (3) the Due Process Clause of the Fourteenth Amendment by incarcerating him without probable cause (Fourth Cause of Action); and (4) the First Amendment by harassing, unlawfully arresting and detaining him (Seventh Cause of Action). He also alleges that by unlawfully arresting, transporting and incarcerating him, defendants are liable for false arrest (Fifth Cause of Action) and false imprisonment (Sixth Cause of Action). He further alleges that Washington County committed battery through Harris' intentional use of excessive force (Second Cause of Action). He seeks compensatory, exemplary, and punitive damages, attorney fees and costs, as well as a declaratory judgment and injunctive relief.

This court has original jurisdiction under 28 USC §§ 1331 and 1343, as well as supplemental jurisdiction under 28 USC § 1367.

2 - FINDINGS AND RECOMMENDATIONS

Elkins has now filed a Motion for Partial Summary Judgment (docket # 49), and defendants have in turn filed a Motion for Summary Judgment (docket # 59).  For the reasons below, Elkins' motion should be denied and defendants' motion should be granted.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).  The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party."  *Id* (citation omitted).

///

///

///

3 - FINDINGS AND RECOMMENDATIONS

///

## FACTS

On May 21, 2004, Elkins was driving in the Washington Square mall parking lot to pick up his wife from work. He noticed a Washington County Sheriff's vehicle cruising past him and videotaped a few frames of this car. Blair Decl, Exhibit 2 (Video of May 21, 2004 Incident provided by Elkins) ("Video"), 9:49 pm. After Elkins' wife got in the car, Elkins drove in the direction that the police vehicle had gone and saw the sheriff's vehicle parked and a deputy and another citizen standing beside the car talking. Believing that the police vehicle had followed him into the mall parking lot, Elkins approached the deputy with the videocamera exposed and asked for the deputy's name. *Id*, 9:54 pm. The deputy, who turned out to be Duncan, told Elkins to "cease and desist" because he was doing police business, to "go over there and wait" and that he would "be happy to address it" when he finished his other business. *Id*, 9:55 pm.

Elkins parked some distance away and waited. Duncan then called for back-up, to which deputies Harris and Lopuszynski responded. When the back-up deputies approached, Elkins, who had his camera fully exposed, told them "[d]on't get your panties in a wad, I've got the camera on ya." *Id*, 10:02 pm. Although Elkins continued to videotape the encounter, the camera did not point at the officers, but was pointed downward or to the side from that moment on.

Elkins angrily complained to Harris and Lopuszynski about being followed by the police in the past and by Duncan into the parking lot and threatened to file a civil suit against Gordon "and his little harassment game." *Id,* 10:03 pm. Having completed his business with the other citizen, Duncan came over. Duncan told Elkins that if he ever again came up to a police officer conducting official business, he would go to jail, to which Elkins objected. *Id.* Duncan then

4 - FINDINGS AND RECOMMENDATIONS

asked Elkins for his drivers' license. *Id*. While getting out his license, Elkins insisted that he

was being harassed by the police and again asked for Duncan's name, which Duncan agreed to

provide. *Id*. Although Elkins was told to calm down, he angrily repeated that he was being

harassed and continued to argue that Duncan had followed him into the parking lot, which

Duncan denied. *Id*, 10:04 pm. *Id*. Elkins accused Duncan of lying and when Duncan refused to

answer any more questions, called him a coward. *Id*, 10:05 pm. Elkins then said "And I saw

you and I got you on the camera," to which Duncan responded by asking if Elkins was "verbally

recording" him. *Id*. When Elkins said he was, Duncan asked him to step out of the car. *Id*.

Duncan asked Elkins for the camera. *Id*. After either Duncan took the camera or Elkins

handed it to him, Elkins made a motion towards Duncan with his hand and was grabbed from

behind by Harris, thrown against his car with enough force to dent the car, then forced to the

ground in a control hold. Although little can be heard on the video, one or more of the officers

told Elkins to stop fighting. *Id*. Elkins' wife also said "[y]ou're strangling him," and a few

seconds later Elkins said that he was being strangled and that Duncan had lied to him. *Id*,

10:06 pm. Elkins also can be heard saying, "See how they're harassing me, Shirley? See how

they're beating me up?" and that he would see the officers in court. *Id*, 10:07 pm. He was

handcuffed, placed in Duncan's vehicle, arrested and read his rights. The entire incident from

the time Duncan approached Elkins' car to the time Elkins was arrested took less than three

minutes. *Id*, 10:03-06 pm.

Elkins was transported to the Washington County Jail in Hillsboro, where he was charged

with Unlawfully Obtaining a Conversation, Harassment, Resisting Arrest, and Interfering with a

Police Officer, incarcerated overnight and then released on his own recognizance on May 22,

2004.  On June 8, 2004, Elkins appeared at his arraignment, learned that the Washington County

District Attorney's Office had filed no instrument of accusation against him, and was released.

## FINDINGS

### I.    § 1983 Claims

Elkins alleges that by arresting him, using excessive force, searching and seizing his

personal property, as well as harassing, detaining and incarcerating him, defendants violated his

rights under the First, Fourth and Fourteenth Amendments of the United States Constitution.  By

seeking a remedy for violations of his constitutional rights, Elkins alleges a violation of 42 USC

§ 1983.  A plaintiff asserting a claim for relief under § 1983 must allege: (1) a violation of rights

protected by the United States Constitution or created by federal statute (2) proximately caused

(3) by conduct of a person (4) acting under color of state law.  *Crumpton v. Gates*, 947 F2d 1418,

1420 (9th Cir 1991).

### A.    § 1983 Claims Against Duncan, Harris, Lopuszynski and Gordon in Their Official Capacity

The caption of the Complaint names Duncan, Harris, Lopuszynski and Gordon both

individually and in their "official capacity."  Actions for damages against a party in his or her

official capacity are, in essence, actions against the government entity.  *Monell v. Dep't of Social

Serv's. of City of N.Y.*, 436 US 658, 690 n55 (1978).  Thus, "[t]here is no longer a need to bring

official-capacity actions against local government officials, for under *Monell* . . . local

government units can be sued directly for damages and injunctive relief."  *Kentucky v. Graham*,

473 US 159, 167 n14 (1985).  "[P]ersonal capacity suits seek to impose personal liability upon a

government official for acts he takes under color of state law."  *Id* at 165.  Official capacity suits,

on the other hand, "generally represent only another way of pleading an action against an entity

6 - FINDINGS AND RECOMMENDATIONS

of which the officer is an agent" and are, in all respects other than name, to be treated as a suit against the entity.  *Id* at 165-66, citing *Monell*.

Here Elkins sues Washington County for the same claims and damages as the individual defendants.  Thus, claims against Duncan, Harris, Lopuszynski and Gordon in their "official capacity" are superfluous and should be dismissed.

### B.    § 1983 Claims Against Duncan, Harris, and Lopuszynski in Their Individual Capacity

In a successful § 1983 action, the conduct complained of must have been committed by a person acting under color of state law and must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Alford v. Haner*, 333 F3d 972, 975-76 (9th Cir 2003).  It is undisputed that all three officers acted under color of law.  At issue then is whether their actions deprived Elkins of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Duncan, Harris, and Lopuszynski contend that they did not deprive Elkins of any constitutional or legal right, and that even if they did, they are entitled to qualified immunity.  Since the issue of whether a constitutional or legal right was violated is the first prong of the qualified immunity inquiry, the court will address that issue as part of the qualified immunity analysis.

### 1.    Qualified Immunity

The doctrine of qualified immunity insulates government agents from liability for actions taken in good faith while exercising discretionary authority in their official capacity.  *Deorle v. Rutherford*, 272 F3d 1272, 1285 (9th Cir 2001), *cert denied*, 536 US 958 (2002).  In a suit against police officers under § 1983, the court's initial inquiry is whether, "[t]aken in the light most

favorable to the party asserting the injury," the facts alleged show the officer's conduct violated

a constitutional right.  *Saucier v. Katz,* 533 US 194, 201 (2001); *Boyd v. Benton County*, 374 F3d

773, 778 (9th Cir 2004) (citing *Saucier*).   If such a deprivation is shown, the court must then

determine whether the right violated was so clearly established that the officials are not entitled

to qualified immunity.  *Id.*

A right is "clearly established" when "the contours of the right [are] sufficiently clear that

a reasonable official would understand that what he is doing violates that right."  *Anderson v.*

*Creighton*, 483 US 635, 640 (1987).  The relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted.  *Saucier*, 533 US at 202, citing *Wilson v. Layne,* 526

US 603, 615 (1999).  The issues are evaluated for objective reasonableness based upon the

information officers had when the conduct occurred, not upon the subjective intentions of the

officers.  *Id*, 533 US at 207.  "Officials can still be on notice that their conduct violates

established law even in novel factual circumstances."  *Hope v. Pelzer*, 536 US 730, 731 (2002),

citing *United States v. Lanier*, 520 US 259, 271 (1997).

### 2.    False Arrest

#### a.    Violation of a Constitutional Right

A false or unlawful arrest is treated as a claim of unreasonable seizure of the person

through the Fourth Amendment to the United States Constitution, applicable to the states through

the Fourteenth Amendment.  *Brower v. County of Inyo*, 489 US 593, 596 (1989).  To prevail on a

§ 1983 false arrest claim, a plaintiff must show that there was no probable cause for the arrest.

*Cabrera v. City of Huntington Park*, 159 F3d 374, 380 (9th Cir 1998) (*per curiam*).  Probable

cause requires "a reasonable belief evaluated in light of the officer's experience and the practical considerations of everyday life" that a crime has been, is being, or is about to be committed. *United States v. George*, 883 F2d 1407, 1412 (9th Cir 1989). In other words, probable cause exists when, under the totality of circumstances known to the arresting officer, a reasonable person would believe that the suspect had committed a crime. *Dubner v. City & Co. of San Francisco*, 266 F3d 959, 966 (9th Cir 2001). In a § 1983 action, "the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury." *McKenzie v. Lamb*, 738 F2d 1005, 1008 (9th Cir 1984).

Elkins was arrested for Unlawfully Obtaining a Conversation (ORS 165.540), Harassment (ORS 166.090), Resisting Arrest (ORS 162.315), and Interfering with a Police Officer (ORS 162.247). If the officers had probable cause to arrest Elkins for Unlawfully Obtaining a Conversation in violation of ORS 165.540(c), then his response to that arrest led to probable cause for his arrest on the other offenses.

ORS 165.540(1)(c) provides that, "[e]xcept as otherwise provided in ORS 133.724 or 133.726 or subsections (2) to (7) of this section, a person may not . . . [o]btain or attempt to obtain the whole or any part of a conversation by means of any device . . . if not all participants in the conversation are *specifically informed* that their conversation is being obtained" (emphasis added). For purposes of this statute, "'conversation" means the transmission between two or more persons of an oral communication which is not a telecommunication or a radio communication." ORS 165.535(1).

Elkins first contends that the officers did not have probable cause to arrest him for this offense because Washington County Deputy District Attorney Chris Lewman ("Lewman")

decided not to bring criminal charges against him.  However, Lewman's decision was not based

on the lack of probable cause, but rather on his belief that he could not prove the commission of

the infractions beyond a reasonable doubt which is a higher standard of proof "beyond a moral

certainty."  Lewman Depo, pp. 10, 14, 17; Supplemental Documents in Support of Motion for

Summary Judgment, Exhibit 1 ("Charging Decision").  "Neither certainty, nor proof beyond a

reasonable doubt, is required for probable cause to arrest."  *United States v. Harvey*, 3 F3d 1294,

1296 (9th Cir 1993), *cert denied*, 510 US 1130 (1994).  Lewman stated in his Charging Decision

that "when asked, the defendant did inform the deputies that he was recording the statements."

However, Lewman did not view the videotape or interview any of the witnesses, but instead

relied on the police reports.  Lewman Depo, pp. 7-8, 15.  As explained below, the undisputed

facts based on the videotape and witness testimony reveals that Elkins' notice was not sufficient

under ORS 165.540(1)(c) as to Duncan.

Second, Elkins argues that he complied with ORS 165.540 because he "specifically

informed" the officers that he was recording the encounter.  He approached Duncan to obtain his

name with his videocamera exposed and continued to have the videocamera in plain view as

Harris and Lopuszynski approached him.  As Harris and Lopuszynski approached, Elkins told

them "[d]on't get your panties in a wad, I've got the camera on ya."  That notice may or may not

have been sufficient to comply with ORS 165.540 since Elkins did not specifically mention the

audio recording.  Even if it was sufficient, it was given before Duncan approached and joined the

conversation.  The videocamera may have remained in plain view, although pointing down at an

angle.  However, Elkins did not give notice to Duncan that he was recording the conversation

until Duncan asked.  Elkins' affirmative response to Duncan's inquiry does not satisfy the notification requirements of ORS 165.540(1)(c) with respect to Duncan.

The test is not whether the participants to the conversation are or reasonably should be aware that the conversation is being recorded.[1]  Because Elkins recorded an encounter in a public place between an officer performing his public duty and a private citizen, ORS 165.540(1)(c) requires that the person being recorded be "specifically informed."  As explained by the Oregon Court of Appeals in a similar situation, the "legislature clearly intended to require persons recording the conversations of others to given an unequivocal warning to that effect."  *State v. Bichsel*, 101 Or App 257, 262, 790 P2d 1142, 1144-45 (1990).

In *Bichsel*, the defendant carried a tape recorder with which she had been taping police broadcasts when she was stopped by the police outside a shopping mall in Eugene.  The tape recorder was in plain sight and continued to run and record her confrontation with the police officers.  Contrary to defendant's assertion, the court concluded that defendant's taping of her confrontation with the police was not exempt either as a "public or semipublic meeting" under ORS 165.540(7)(a) (now ORS 165.540(6)(a)) or as a "private meeting or conference" under ORS 165.540(7)(c) (now ORS 165.540(6)(c)).  *Id*, 101 Or App at 261 n3, 790 P2d at 1144 n3.  The court then upheld her conviction under ORS 165.540(1)(c) because she did not notify the police officers that she was recording.

Citing *Bichsel*, the Oregon Court of Appeals repeated in *State v. Haase*, 134 Or App 416, 419, 895 P2d 813, 815, *review denied*, 322 Or 612, 911 P2d 1230 (1995), that "the requirements

---

[1]  That test is incorporated into one of the exceptions under the statute for "[p]rivate meetings or conferences if all others involved knew or reasonably should have known that the recording was being made."  ORS 165.540(6)(c).  However, the meeting between Elkins and Duncan was not a private meeting or conference.

11 - FINDINGS AND RECOMMENDATIONS

of ORS 165.540(1)(c) are *not* met when a party to a conversation, although not warned, 'reasonably should have known that [a] recording was being made.' Instead, that party must receive 'an unequivocal warning that the conversation is being 'obtained.'" (emphasis in original). The court further held that "the statute does not require any particular form of warning," but must "reasonably impart[]" to the participants that the conversation is being recorded. *Id*. That requirement was satisfied by the arresting officer advising the defendant: "I need to tell you before you start that this conversation is being monitored by camera and by audio means." *Id*. "The test is not whether defendant was aware that the conversation was being recorded; it is whether the officer gave defendant the required information." *Id*, 134 Or App at 419-20, 895 P2d at 815.

Prior to recording his conversation with Duncan, Elkins did not give Duncan any "unequivocal warning." While Duncan was occupied with another individual, Elkins told Harris and Lopuszynski that he had the camera on them, but gave no explicit announcement to them that he was recording the conversation. When Duncan finished his business and came over to Elkins, he became a fourth party to the conversation, but Elkins gave him no warning that he was recording the conversation. In fact, the camera angle is such that it is not even focused on Duncan. The tape reveals that the minute Elkins announced he had been recording with a camera, Duncan inquired if he was recording audibly to which Elkins replied "yes." From that point in time forward, Elkins could record Duncan without violating ORS 165.540(1)(c). However, Elkins recorded prior to that point in time without giving prior notice to Duncan, thus violating the statute. *See Haase*, 134 Or App at 419 (party must receive warning the conversation is "being" recorded).

12 - FINDINGS AND RECOMMENDATIONS

Elkins also contends there is no reasonable expectation of privacy in a public conversation, citing *Katz v. United States*, 389 US 347 (1967), as reaffirmed in *Johnson v. Hawe*, 388 F3d 676 (9th Cir 2004), *cert denied*, 544 US 1048 (2005). *Katz* held that there is no reasonable expectation of privacy in police radio communications. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 US at 351. Following *Katz*, *Johnson* held that Washington's Privacy Act does not bar the recording of communications by a police officer with others on his police radio. Similarly, Oregon law does not criminalize the tape recording of a police radio broadcast pursuant to the exception in ORS 165.540(4) for a radio broadcast being "transmitted for the use of the general public." *Johnson*, 388 F3d at 684, citing *Bichsel*, *supra*. None of these cases assist Elkins because he did not record a police radio broadcast. Instead, he recorded his encounter with the three officers which presents a very different issue under ORS 165.540(1)(c).

Elkins also appears to contend that ORS 165.540(1)(c) is unconstitutional because it does not allow recording without consent in a public place, citing Washington law. *State v. Flora,* 68 Wash App 802, 845 P2d 1355 (1992) (recording an arrest made by public officers performing functions on public thoroughfares does not violate Washington law because the arrest did not constitute a private conversation). However, tape recording an encounter with police officers in a public place is a crime in Oregon, and Elkins was arrested for violating Oregon law. The Oregon Court of Appeals has held that this law does not violate various provisions of the Oregon and United States Constitutions, including the right to privacy under the Fourteenth Amendment. *State v. Knobel*, 97 Or App 559, 563 n1, 777 P2d 985, 988 n1 (1989), *review denied*, 309 Or

522, 789 P2d 1387 (1990) ("ORS 165.540(1)(c) includes no language indicating that a reasonable expectation of privacy is required.").[2]

In sum, the undisputed facts reveal that Elkins violated ORS 165.540(1)(c). Therefore, his arrest was lawful and did violate either the Fourth or Fourteenth Amendments.

### b.    Clearly Established Law

Because Elkins cannot prove that his arrest violated the Fourth or Fourteenth Amendments, the officers are entitled to qualified immunity without the need to address whether the constitutional right was clearly established.

### 2.    Search and Seizure

### a.    Violation of a Constitutional Right

Elkins claims that the seizure of his videocamera violated his Fourth Amendment protection against unreasonable seizures. "[S]eizures are 'reasonable' only if supported by probable cause." *Dunaway v. New York*, 442 US 200, 213 (1979).

When a lawful arrest is made, it is permissible for law enforcement to reasonably search the person arrested and the area immediately within his reach in order to locate any weapons the person might use or any evidence that might otherwise be destroyed. *Chimel v. California*, 395 US 752, 763 (1969). Such a search generally must be limited to the immediate locale of the

---

[2] In contrast, ORS 165.543(1) contemplates an expectation of privacy requirement by providing that:
[A]ny person who willfully intercepts, attempts to intercept or procures any other person to intercept or attempt to intercept any wire or oral communication where such person is not a party to the communication and where none of the parties to the communication has given prior consent to the interception, is guilty of a Class A misdemeanor.

"Oral communication," as used in ORS 165.543 means "any oral communication, other than a wire or electronic communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." ORS 165.543(2) (incorporating definition set forth in ORS 133.721(7)).

arrest.  *Id*; *see also Maryland v. Buie*, 494 US 325, 333 (1990).  In Oregon, the scope of a lawful

search incident to arrest is codified at ORS 133.535 which describes what may be searched or

seized:

> The following are subject to search and seizure under ORS 133.525 to
> 133.703:
> (1) Evidence of or information concerning the commission of a criminal offense;
> (2) Contraband, the fruits of crime, or things otherwise criminally
> possessed;
> (3) Property that has been used, or is possessed for the purpose of being
> used, to commit or conceal the commission of an offense; and
> (4) A person fo whose arrest there is probably cause or who is unlawfully held in
> concealment.

Because the officers had probable cause to arrest Elkins for violating ORS 165.540(1)(c),

they also had probable cause to seize his videocamera which was within his reach and had "been

used  . . . to commit . . . the commission of an offense."  Therefore, seizure of the videocamera

did not violate the Fourth Amendment.

**b.      Clearly Established Law**

Because Elkins cannot prove that the seizure of his videocamera violated the Fourth or

Fourteenth Amendments, the officers are entitled to qualified immunity without the need to

address whether the constitutional right was clearly established.

**3.      Excessive Force**

**a.      Violation of a Constitutional Right**

Even if an arrest is based on probable cause, the nature and degree of force used to effect

the arrest must be "analyzed under the Fourth Amendment's objective reasonableness standard,

not under substantive due process principles."  *Saucier* 533 US at 204-05, citing *Graham v.*

*Connor*, 490 US 386, 388, 394 (1989) (internal quotation marks omitted). Determining whether a

15 - FINDINGS AND RECOMMENDATIONS

police officer's use of force was reasonable or excessive "requires careful attention to the facts and circumstances of each particular case" and a "careful balancing" of an individual's liberty with the government's interest in the application of force. *Graham*, 490 US at 396; *see Deorle*, 272 F3d at 1279-81.

The reasonableness of the use of force "must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 US at 396. When determining whether the totality of the circumstances justifies the degree of force, the court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id* (citation omitted). The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id* at 397 (citations omitted).

Excessive force claims are generally questions of fact for the jury. *Hervey v. Estes,* 65 F3d 784, 791 (9th Cir 1995). However the court may decide such claims as a matter of law if, after resolving all factual disputes in favor of the plaintiff, the court concludes that the officer's use of force was objectively reasonable under the circumstances. *Scott v. Henrich,* 39 F3d 912, 915 (9th Cir 1994), *cert denied*, 515 US 1159 (1995). Because the inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," summary judgment in excessive force cases "should be granted sparingly." *Santos v. Gates,* 287 F3d 846, 853 (9th Cir 2002).

16 - FINDINGS AND RECOMMENDATIONS

After Elkins confirmed he was recording the conversation, Duncan asked him to step out of the car because he was under arrest and obtained the camera, either by reaching in the window of the car and taking it from him as he stepped out of the car. Plaintiff's Memorandum of Law in Opposition to Defendant's Request for Summary Judgment (docket #97) ("Plaintiff's Memo"), p. 2; Duncan Decl, ¶ 13; Harris Decl, ¶ 11; Lopuszynski Decl, ¶ 10. Elkins got out of the car, claims that he said, "Ah, come on, that's not illegal" (although those words are not audible on the Video), pointing toward the camera with his hand. Plaintiff's Memo, p. 2. Given the context of the heated exchange and raised voices, Harris and Lopuszynski thought Elkins was taking a threatening move to possibly injure Duncan. Harris Depo, p. 7; Harris Decl, ¶ 3; Lopuszynski Decl, ¶ 10. Harris got immediate control of Elkins in a choke hold from behind, slung him against the car, and took him to the ground, all the while advising Elkins to stop fighting. *Id*; Plaintiff's Memo, p. 2. Harris used a "pre-carotid" hold by placing his arm around Elkins' neck so that his trachea was in the hollow of Harris' arm at the elbow, with his biceps and forearm applying moderate pressure to the sides of his neck, leaving Elkins an opportunity to breathe but giving Harris control and the opportunity to apply a "carotid" hold, if necessary. Harris Decl, ¶ 12. The officers then placed Elkins in handcuffs.

The act which prompted the arrest of Elkins was a minor infraction. However, of the factors to consider under the *Graham* balancing test, the most important one is "whether the suspect poses an immediate threat to the safety of the officers or others." *Smith v. City of Hemet,* 394 F3d 689, 702 (9th Cir), *cert denied*, 545 US 1128 (2005), quoting *Chew v. Gates,* 27 F3d 1432, 1441 (9th Cir 1994), *cert denied*, 513 US 1148 (1995). A fact-finder may also consider "the availability of alternative methods of capturing or subduing a suspect." *Smith,* 394 F3d at

703, citing *Chew,* 27 F3d at 1441 n5.  Another factor to be considered is "the giving of a warning or the failure to do so."  *Deorle,* 272 F3d at 1284.

It is undisputed that Elkins made a motion towards Duncan.  The officers perceived that this motion presented a potential threat to Duncan and used force to restrain Elkins.  The issue is whether the degree of force used in response was reasonable under the circumstances.  Elkins maintains that the officers overstepped the need for physical restraint by choking him, causing him to struggle to breathe, and throwing him against the car, causing "lateral epirondylitis" (also known as tennis elbow) which has required treatment.  Complaint, ¶ 4.10.  However, the record does not reveal the severity of the injury or the extent of treatment required.

Based on the totality of the circumstances, the balance tips in favor of the governmental interests in this case.  Even if Elkins turned out not to be dangerous, the officers were faced with a man who was speaking in a loud and angry tone of voice, making agitated complaints about police conduct in general and Duncan's conduct in particular, and ignoring their advice to calm down.  The officers placed a non-deadly restraining hold on Elkins only after he moved toward Duncan with his upper body.  They wife told him to stop fighting, which indicates some level of resistance by Elkins.  The officers then took Elkins to the ground in order to handcuff him and, in the process, slammed him against the car.  However, there is no evidence that the car could be easily avoided during that maneuver.  The fact that Elkins hit the car indicates the amount of force used, but not the reasonableness of the force used.  Although Elkins claims that he was being strangled, his voice can be heard complaining about the strangling, which indicates that his airway was not completely obstructed.  Elkins may have suffered some injury, but the record does not reveal that it was severe.

18 - FINDINGS AND RECOMMENDATIONS

The determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham,* 490 US at 396-97. Here, the whole incident took less than three minutes.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id* at 396. The Ninth Circuit has held that equally or more aggressive police conduct than used here was objectively reasonable, affirming summary judgment decisions in favor of police officers. *See Tatum v. City and County of San Francisco*, 441 F3d 1090, 1096 (9th Cir 2006) (positioning the plaintiff's arm behind his back in a bar arm control, placing him against a wall and then forcing him to the ground was not excessive force where the plaintiff ignored the officer's commands and spun around partially escaping the officer's grasp, even though the plaintiff died from a cocaine overdose); *Jackson v. City of Bremerton*, 268 F3d 646, 652-53 (9th Cir 2001) (concluding that spraying the plaintiff's hair with a chemical irritant prior to her arrest, pushing her to the ground to handcuff her, and roughly pulling her to her feet during her arrest was not excessive force where she interfered with the officer's attempt to maintain order of a rowdy group); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F3d 912, 921-22 (9th Cir 2001) (twisting the plaintiff's left arm behind her with enough force to lift her off the ground and break her watch band while attempting to handcuff her was held to be reasonable where the plaintiff refused to show transit identification upon request, refused to hand over purse when warned that non-compliance would lead to arrest, stiffened her arm and attempted to pull free when the officer grabbed her arm). When a person attempts to pull away from the arresting officer, even if only to shift to a more comfortable

position, he is resisting arrest which justifies the use of force and/or a control hold to subdue the arrestee and effectuate the arrest. *Tatum*, 441 F3d at 1097.

In light of the undisputed facts and the totality of the circumstances, the amount of force used by Harris and Lopuszynski to restrain Elkins while attempting to secure him in handcuffs, while unfortunate and perhaps avoidable based on hindsight, is nonetheless objectively reasonable.

        **b.**      **Clearly Established Law**

Even if the force used was excessive, the officers are entitled to qualified immunity because it would not have been clear to a reasonable officer that his conduct was unlawful in that situation. The "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* This is codified by Oregon law:

> **161.235 Use of physical force in making an arrest or in preventing an escape.** Except as provided in ORS 161.239, a peace officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it necessary:
> (1) To make an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows that the arrest is unlawful; or
> (2) For self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent an escape.
>
> **161.245 "Reasonable belief" described; status of unlawful arrest.**
> (1) For the purposes of ORS 161.235 and 161.239, a reasonable belief that a person has committed an offense means a reasonable belief in facts or circumstances which if true would in law constitute an offense. If the believed facts or circumstances would not constitute an offense, an erroneous though not unreasonable belief that the law is otherwise does not render justifiable the use of force to make an arrest or to prevent an escape from custody.

20 - FINDINGS AND RECOMMENDATIONS

> (2)  A peace officer who is making an arrest is justified in using the physical force prescribed in ORS 161.235 and 161.239 unless the arrest is unlawful and is known by the officer to be unlawful.

Harris met what he perceived as a threat of physical force by Elkins in attacking Duncan and resisting arrest by using a measured degree of force.  He did not use chemical agents, an electronic stun device, a blunt instrument, a beanbag gun, or lethal force.  He did not even strike a blow, but instead used a restraint hold until the handcuffs could be applied.  Duncan and Lopusznyski then assisted to control Elkins' arms and apply handcuffs.  Elkins cites no case, and the court is aware of none, in which such a measured use of physical force in response to a perceived threat of unarmed physical force has been found unreasonable.  Thus, the officers are entitled to qualified immunity as to the excessive force claim.

### 4.    Unlawful Detention

In his Fourth Cause of Action, Elkins alleges that his "incarceration without probable cause violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution."  However, his incarceration occurred as a result of his arrest.  As discussed above, Elkins cannot prevail on his constitutional claim that he was arrested without probable cause.  Accordingly, he cannot prevail on this claim that he was incarcerated without probable cause.

### 5.    Free Speech

#### a.    Violation of a Constitutional Right

The Seventh Cause of Action alleges that the "harassment, unlawful arrest, and detention of [Elkins] were the direct result of the subject matter of [his] videotaping."  Since his videotaping constitutes "speech" within the ambit of the First Amendment, he alleges that these actions violated his constitutional right to free speech.

To establish a First Amendment violation, plaintiff must prove that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F3d 1283, 1300 (9th Cir 1999), quoting *Sloman v. Tadlock,* 21 F3d 1462, 1469 (9th Cir 1994). The inquiry is not whether speech was "actually inhibited or suppressed," but "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Id*, quoting *Crawford-El v. Britton*, 93 F3d 813, 826 (DC Cir 1996), *vacated on other grounds*, 520 US 1273 (internal quotation marks and citation omitted).

The primary defect with this claim is that the lack of evidence that the content of Elkins' speech played any role in his arrest. As discussed above, it was Elkins' conduct in approaching the officers and his recording of the encounter without prior notice that motivated Duncan to arrest him. Thus, there is no basis on which to conclude that his arrest and detention constituted an unconstitutional chilling of Elkins' First Amendment right.

Elkins also appears to contend that he was arrested because he asked for Duncan's name, as evidenced by Duncan's order to "cease and desist" and to wait and later by his threat to put Elkins in jail if he ever interfered with official police business. However, a threat to do an unconstitutional act does not rise to the level of a constitutional violation. *See Gaut v. Sunn*, 810 F2d 923, 925 (9th Cir 1987).

Thus, Elkins cannot prevail on his claim for violation of the First Amendment.

///

///

///

22 - FINDINGS AND RECOMMENDATIONS

### b. **Clearly Established Law**

Because Elkins cannot prove a violation of the First Amendment, the officers are entitled to qualified immunity without the need to address whether the constitutional right was clearly established.

### C. **§ 1983 Claim Against Washington County**

### 1. **Legal Standard**

Municipalities and other governmental bodies are "persons" subject to damages liability under § 1983 only where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell*, 436 US at 691. In other words, a municipality cannot be held liable for the acts of its employees based solely on the doctrine of *respondeat superior*. *Id.* Instead, liability exists only where the unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by municipal officers, or where the constitutional deprivation is visited pursuant to governmental "custom" even though such a custom has not received formal approval. *Id* at 690-91.

A plaintiff must show that a municipal policy or custom was the "moving force" behind the constitutional deprivation by demonstrating that the municipal action was taken with deliberate indifference to known or plainly obvious consequences and directly caused the deprivation of constitutional rights. *Board of County Comm'rs of Bryan County, Okl. v. Braves*, 520 US 397, 404-05 (1997). A single incident of unconstitutional conduct by a municipal employee is "clearly insufficient" to prove the existence of municipal policy. *Merritt v. County of Los Angeles*, 875 F2d 765, 770 (9th Cir 1989), citing *Oklahoma City v. Tuttle*, 471 US 808, 823-24 (1985). Proof of random acts or isolated events also is insufficient to establish a custom

or practice.  *Thompson v. City of Los Angeles*, 885 F2d 1439, 1444 (9th Cir 1989).  Rather, a

plaintiff must prove widespread, systematic constitutional violations which have become the

force of law.  *Board of County Comm'rs*, 520 US at 404.

An unconstitutional policy or custom need not be carried out by the municipality's

official lawmakers to subject the municipality to liability.  Liability may lie against a

municipality for the conduct of those whose edicts or acts may fairly be said to represent official

policy.  *Pembaur v. Cincinnati*, 475 US 469, 480 (1986).  Thus, where final policy-making

authority is delegated to an official who then acts pursuant to that delegated authority in a way

that causes a constitutional violation, the municipality will be liable for the resulting injury.

*St. Louis v. Praprotnik*, 485 US 112, 130 (1988).  Whether an official has final policy-making

authority for purposes of § 1983 is a question for the court to decide, with reference to state or

local law as appropriate.  *Jett v. Dallas Indep. Sch Dist.*, 491 US 701, 737 (1989). Pursuant to

ORS 206.010, the sheriff is "the chief executive officer and conservator of the peace of the

county," and thus, the highest ranking, if not the only, policy maker in the county. *See Streit v.*

*County of Los Angeles,* 236 F3d 552, 564, 565 (9th Cir 2001), *cert denied*, 534 US 823 (2001).

## 2.    Analysis

Elkins alleges that Washington County has an "absence of a system to properly train

officers about citizen's rights."  Complaint, ¶ 5.1.  He also alleges that it has a practice of

"threatening with arrest and incarceration for merely asking [an officer's] name, videoing and

attempting to give notification of intent," as well as a lack of "acceptance or accountability for

their actions in the face of clear evidence to the contrary," and a "deliberate indifference of

official defendants to this pattern of misconduct, and their repeated denials in the face of clear evidence that a pattern of abuse and misconduct exists." *Id* at ¶¶ 5.2-5.4.

Elkins does not allege or offer any evidence of a prior constitutional violation sufficient to create a persistent and widespread practice or custom having the force of law. Instead, he contends that Washington County and Gordon failed to provide adequate training to the three officers concerning ORS 165.540. For support, Elkins points to admissions that none of the three officers had ever received specific training concerning ORS 165.540 or had ever arrested or assisted in the prosecution of anyone in violation of ORS 165.540. Defendant Duncan's Response to Request for Admissions No. 3; Duncan Depo, pp. 7-8; Defendant Gordon's Response to Request for Admissions No. 4; Gordon Depo, p. 5; Defendant Harris' Response to Request for Admissions No. 13; Harris Depo, p. 4; Defendant Lopuszynski's Response to Request for Admissions No. 3. Moreover, Harris incorrectly believed that it was illegal not just to audio record, but also to video record, a conversation. Harris Depo, pp. 8-9.

As discussed above, Elkins has failed to establish a genuine issue of material fact as to whether he was deprived of his constitutional rights through an unlawful arrest. Even if Elkins had suffered a constitutional deprivation, he would have to show that the failure to provide adequate training or supervision amounts to a policy or custom evidencing a deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton, Ohio v. Harris*, 489 US 378, 380 (1989). This would require Elkins to "establish a program-wide inadequacy in training." *Alexander v. City and County of San Francisco*, 29 F3d 1355, 1367 (9th Cir 1994), *cert denied*, 513 US 1083 (1995). He cannot simply allege a specific type of training that he believes the officers should have had.

25 - FINDINGS AND RECOMMENDATIONS

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  It may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situation with which they must deal.  And plainly, adequately trained officers occasionally make mistakes; the fact they do says little about the training program or the legal basis for holding the city liable.

*City of Canton*, 489 US at 390-91 (citations omitted); *see also Ting v. United States*, 927 F2d 1504, 1512 (9th Cir 1991) ("the fact that the agents may not have been trained in every conceivable hostile arrest scenario . . . would not render the training inadequate.")

Elkins relies on *Johnson v. Hawe*, 388 F3d 676, 686 (9th Cir 2004), *cert denied*, 544 US 1048 (2005), which denied summary judgment against a *Monell* claim.  The court concluded that the county's self-training program, which assigned responsibility to individual officers for keeping abreast of recent court decisions involving law enforcement, represented deliberate indifference in violation of constitutional rights.  However, the plaintiff submitted the opinion of an expert that the policy amounted to a failure to train.  In contrast, Elkins has offered no such evidence, by way of an expert opinion or otherwise, that the training program by Washington County is inadequate.

Furthermore, a plaintiff must also show that the inadequate training program "actually caused" the constitutional violation.  *City of Canton*, 489 US at 391.  Courts must ask: "Would the injury have been avoided had the employee been trained under a program that was not

deficient in that respect?" *Id.*  Elkins has failed to offer any evidence answering that question in his favor.

Accordingly, Elkins' § 1983 claim against Washington County should be dismissed.

### D.    § 1983 Claim Against Gordon in his Individual Capacity

Elkins is also suing Gordon in both his individual capacity, although the only allegation against Gordon is that, as sheriff, he failed to properly train the officers in making ORS 165.540 arrests.  For the reasons discussed above with respect to Washington County, this claim should be dismissed.

## II.    State Law Claims

Actions stemming from the actions of public employees in the course and scope of their employment are governed exclusively by the Oregon Tort Claims Act ("OTCA"), ORS 30.260-.300.  *See* ORS 30.265(1).  The OTCA also makes a public body liable under state law for the conduct of its employees and agents.  *Id.*  Washington County is a public body, ORS 30.260(4)(b); Gordon is an officer of Washington County, ORS 204.005(1); Duncan and Harris are employees of the Washington County Sheriff's Office; and Lopuszynski is a reserve officer employed by Washington County Sheriff's Office.  Therefore, OTCA applies to Elkins' false imprisonment claims against all defendants and the battery claim against Washington County.

### A.    False Arrest and False Imprisonment

In Oregon, false arrest and false imprisonment do not constitute separate tort claims.  *See Hiber v. Creditors Collection Serv., Inc.*, 154 Or App 408, 413, 961 P2d 898, 901, *rev denied*, 327 Or 621, 971 P2d 413 (1998) (citation omitted) (recognizing that in Oregon, an action for false imprisonment is also called false arrest).  The gravamen of a false imprisonment claim is

"the unlawful imposition of restraint on another's freedom of movement." *Buckel v. Nunn*, 133 Or App 399, 405, 891 P2d 16, 21 (1995), quoting *Watkins v. City of Portland*, 71 Or App 663, 697, 693 P2d 1349 (1985). Both torts require proof of four elements: "(1) defendant must confine plaintiff; (2) defendant must intend the act that causes the confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Hiber* 154 Or App at 413, 961 P2d at 901 (citations omitted) (false imprisonment); *Ross v. City of Eugene*, 151 Or App 656, 663, 950 P2d 372, 375 (1997) (false arrest). The defendant "must only intend to accomplish the act that causes confinement; they need not intend the confinement to be unlawful." *Oviatt By and Through Waugh v. Pierce,* 954 F2d 1470, 1479 (9th Cir 1992) (interpreting Oregon law).

In an action for false imprisonment or false arrest, the plaintiff has the burden to show the imprisonment. *Ross*, 151 Or App at 663, 950 P2d at 375. The burden then shifts to the defendant to show that the imprisonment was not unlawful. *Id* (citation omitted). Generally, whether the elements of false arrest are satisfied is a factual question for the jury to decide. *Id* (citation omitted). However, "when the facts are not in dispute and there is only one reasonable inference to be drawn from the evidence, the trial court decides the issue." *Id* (citation omitted).

Elkins contends that his incarceration without probable cause constituted false arrest and false imprisonment. While there is no dispute that the imprisonment took place, defendants contend that Elkins has failed to show a genuine issue of material fact as to whether the confinement was unlawful.

ORS 133.310(1) authorizes a peace officer to "arrest a person without a warrant if the officer has probable cause to believe that the person has committed . . . (b) A misdemeanor."

28 - FINDINGS AND RECOMMENDATIONS

Violating ORS 165.540(1)(c) is a misdemeanor.  Therefore, the state law claims for false arrest and false imprisonment rise or fall with Elkins' § 1983 claim that his Fourth and Fourteenth Amendment rights were violated because the officers did not have probable cause to arrest him. As discussed above, the officers had probable cause to arrest Elkins for violating ORS 165.540(1)(c).  Therefore, Elkins' state law false arrest and false imprisonment claims also fail as a matter of law and should be dismissed.

**B.    <u>Battery</u>**

Elkins brings a claim of battery against Washington County, alleging that "Harris intentionally caused offensive, harmful physical contact by using such excessive force as to propel [Elkins] against the rear fender of [his] vehicle and causing injury to [his] elbow" and damage to his car.

Under ORS 161.235, an officer is justified in using physical force upon another person only when and to the extent that the officer reasonably believes it necessary "to make an arrest . . . unless the peace officer knows that the arrest is unlawful" or "for self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest . . ."  Survival of the battery claim depends on the reasonableness of Harris' belief that the physical force used on Elkins was necessary.  Thus, the battery claim fails for the same reasons as the excessive force claim discussed above.  Accordingly, it should be dismissed.

///

///

///

29 - FINDINGS AND RECOMMENDATIONS

## RECOMMENDATIONS

For the reasons set forth above, Elkins' Motion for Partial Summary Judgment (docket # 49) should be DENIED, and defendants' Motion for Summary Judgment (docket # 59) should be GRANTED.  Accordingly, the court should enter a judgment dismissing this case with prejudice.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due March 22, 2007.  If objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 5th day of March, 2007.

/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge